UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VANESSA POMALES O/B/O A.N.J.,

                              Plaintiff,            Case # 18-CV-851-FPG

v.                                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**INTRODUCTION**

Vanessa Pomales ("Plaintiff") brings this action on behalf of her minor daughter ("A.N.J.") pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied the A.N.J.'s Supplemental Security Income ("SSI") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 11, 18. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

**BACKGROUND**

A.N.J. was born in August 2013. Tr. 70.[1] In July 2014, Plaintiff protectively applied for SSI with the Social Security Administration on A.N.J.'s behalf. *Id.* She alleged that A.N.J. had been disabled from birth due to deafness in her left ear and a "possible seizure disorder." Tr. 71. On July 19, 2017, Plaintiff and A.N.J. appeared and testified at a hearing before Administrative

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 20.

Law Judge Elizabeth Ebner ("the ALJ"). Tr. 47. On August 28, 2017, the ALJ issued a decision finding that A.N.J. is not disabled within the meaning of the Act. Tr. 18-41. On June 11, 2018, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Commissioner's decision is not *de novo* and that the Commissioner's findings are conclusive if supported by substantial evidence).

### II. Child Disability Standard

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(d). If the child's impairment meets or medically or functionally equals the criteria of the Listings, he or she is disabled.

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ assesses the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation in a domain when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

3

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed A.N.J.'s benefits application under the process described above. At step one, the ALJ found that A.N.J. had not engaged in substantial gainful activity since the application date. Tr. 21. At step two, the ALJ found that A.N.J. has severe hearing loss in her left ear, mild to moderate speech-language delays, and mild to moderate social delays. *Id.* At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal a Listings impairment. Tr. 22. Next, the ALJ found that A.N.J.'s impairments, alone or in combination, do not functionally equal a Listings impairment. Tr. 22. Accordingly, the ALJ determined that A.N.J. is not disabled. Tr. 41.

**II.    Analysis**

Plaintiff argues that substantial evidence does not support the ALJ's determination that A.N.J. had "less than marked" limitations in the domains of (1) Acquiring and Using Information and (2) Interacting and Relating with Others. For the reasons discussed below, the Court concludes that remand is not warranted.

    **a.     Acquiring and Using Information**

In the domain of Acquiring and Using Information, the ALJ considers how well the child acquires or learns information, and how well the child uses the information that he or she has learned. 20 C.F.R. § 416.926a(g). The regulations provide standards by which an ALJ should evaluate this domain. For older infants and toddlers (one to three years old), the regulations state:

> At this age, you are learning about the world around you. When you play, you should learn how objects go together in different ways. You should learn that by pretending, your actions can represent real things. This helps you understand that words represent things, and that words are simply symbols or names for toys, people, places, and activities. You should refer to yourself and things around you by pointing and eventually by naming. You should form concepts and solve simple

4

> problems through purposeful experimentation (e.g., taking toys apart), imitation, constructive play (e.g., building with blocks), and pretend play activities. You should begin to respond to increasingly complex instructions and questions, and to produce an increasing number of words and grammatically correct simple sentences and questions.

*Id.* § 416.926a(g)(2)(ii). For preschool children (three to six years old), the regulations provide:

> When you are old enough to go to preschool or kindergarten, you should begin to learn and use the skills that will help you to read and write and do arithmetic when you are older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you. All of these are called "readiness skills," and you should have them by the time you begin first grade.

*Id.* § 416.926a(g)(2)(iii).[2] A child may be limited in Acquiring and Using Information if her expressive and language skills are lower than the expected level of functioning for her age. Examples including a child who does not use language appropriate for her age, has difficulty explaining things or comprehending directions, or talks only in short, simple sentences. SSR 09-3p, 2009 WL 396025, at *6 (Feb. 17, 2009).

A.N.J. has severe hearing loss in her left ear and uses a hearing aid. Tr. 455. Her condition has caused her difficulty in developing her language skills. Tr. 201, 279. But the parties dispute the severity of those difficulties.

There is evidence that in Fall 2014, A.N.J. had significant language delays. A speech therapist found that when A.N.J. was sixteen months old she was functioning at a nine-to-twelve month language level. Tr. 199. A.N.J. did not express herself with age-appropriate vocabulary, but rather pointed and made grunting sounds to communicate and request desired items. Tr. 200.

---

[2] These are the two developmental periods at issue in this case.

The speech therapist opined that A.N.J.'s language delays were "severely delayed." Tr. 199. However, formal testing from this period placed A.N.J. within developmental expectations in cognition and language skills. Tr. 212.

In January 2015, A.N.J.'s cognitive and language skills were evaluated. The evaluator found that A.N.J.'s overall language skills were "within normal limits when compared to age-matched peers," but she was moderately delayed in her receptive and expressive language skills. Tr. 456-58. For example, A.N.J. could only inconsistently follow simple directions and had difficulty expressing herself through language, relying on vocalizations and gestures. Tr. 457. The evaluator recommended that A.N.J. continue to receive speech therapy and consider supplementing it with additional, targeted therapy. Tr. 459. The next month, A.N.J. enrolled in a special pre-school program for children with hearing and language deficits. Tr. 445.

In Spring 2016, when A.N.J. was approximately two years and eight months old, she underwent another evaluation. Tr. 966. Overall cognitive functioning and development was age-appropriate, with mildly delayed pre-academic skills. Tr. 967. A.N.J.'s receptive and expressive language skills were found to be within normal limits in testing but "mildly delayed functionally." Tr. 968. She could follow one-step directions from the evaluator but had difficulty with unstructured tasks. *Id.* She did not demonstrate her expressive language skills consistently, often using rote phrases and nonspecific language and employing incorrect grammar. *Id.* A June 2016 evaluation notes that A.N.J. was becoming more consistent with using longer phrases and following "non-routine 2-step directions." Tr. 1001. The evaluation stated that A.N.J. would shut down and refuse to talk if placed in an unfamiliar situation or if there were "too many adults in the room with her." *Id.*

6

A.N.J. was placed on an Individualized Education Plan ("IEP") starting in the 2016-2017 school year. Tr. 298. She received services from a teacher of the deaf for two hours per week. *Id.*

In April 2017, A.N.J. was again evaluated. Tr. 1098. The evaluator found that A.N.J. had moderate receptive language delays and mild expressive language delays. Tr. 1098-99. A.N.J. sometimes employed incorrect grammar and had a "fair" ability to interact conversationally with the evaluator. Tr. 1099. A.N.J.'s cognitive skills were within normal limits. Tr. 1102. In May 2017, her IEP was modified so that she would receive more speech therapy and would be in a special classroom. Tr. 291.

After reviewing the evidence in the record, the ALJ concluded that A.N.J. has less than a marked limitation in Acquiring and Using Information, *i.e.*, that her impairments did not seriously interfere with her ability to independently initiate, sustain, or complete applicable activities. 20 C.F.R. § 416.926a(e)(2). The ALJ noted that testing for A.N.J.'s cognitive abilities and pre-academic skills has largely fallen within normal limits, and her receptive and expressive language skills have only been mildly to moderately delayed. Tr. 30, 32. The ALJ found that A.N.J.'s language deficits were often tied to her shyness and "ongoing social reticence"—but in one-on-one situations and with familiar people, A.N.J. was more comfortable and could more easily express herself. *See, e.g.*, Tr. 30, 1044, 1099, 1103. The ALJ acknowledged that the record "clearly show[s] that [A.N.J.] has . . . deficits in various areas," particularly in social and emotional skills, and "is mildly to moderately delayed compared to her similarly-aged peers." Tr. 30, 34-37. Nevertheless, the ALJ found that A.N.J. has made "great progress" over time. Tr. 30.

For several reasons, Plaintiff asserts that the ALJ's conclusion is erroneous. First, she contends that the ALJ "fail[ed] to mention" the accommodations A.N.J. received to function effectively. ECF No. 11-1 at 20. Among other things, A.N.J. has been placed in a special

7

classroom, receives speech therapy every weekday, and uses a hearing aid and an FM machine. Plaintiff cites 20 C.F.R. § 416.924a(b)(5) for the proposition that an ALJ must consider "the effects of structured or supportive settings" on a child's ability to function normally. ECF No. 11-1 at 21.

The Court is not persuaded. To be sure, "[a]n ALJ is required to consider the claimant's need for a structured setting and the degree of limitation in functioning the claimant has or would have outside the structured setting." *Shatraw v. Astrue*, No. 11-CV-13, 2012 WL 589667, at *4 (N.D.N.Y. Feb. 22, 2012) (internal quotation marks and brackets omitted); *see also* 20 C.F.R. 416.924a(b)(5)(iv). But the ALJ did not violate this principle; she discussed A.N.J.'s various school supports in detail. Tr. 27, 28, 30. And when she evaluated A.N.J.'s abilities, she looked at A.N.J.'s functioning not only in her structured school environment, but also at her medical evaluations and at home. *See* Tr. 27, 28, 30. Thus, this is not a case where the ALJ failed to consider how the child functions both in and outside of the structured setting. *See McDaneil v. Comm'r of Soc. Sec.*, No. 17-CV-1326, 2019 WL 3500855, at *6 (W.D.N.Y. Aug. 1, 2019) (ALJ did not violate § 416.924a(b)(5) where he "gave careful consideration to the entire record determining the level of the child's functioning in and outside of the structured environment").

Second, Plaintiff argues that, even if the ALJ considered A.N.J.'s accommodations, she unreasonably "minimized" them to reach her decision. ECF No. 11-1 at 20. While the number of supports A.N.J. received may support a marked limitation, they do not compel that conclusion. *See McDaneil*, 2019 WL 3500855, at *6 (collecting cases and stating that classroom supports do not necessarily "warrant a finding of a marked limitation"). In reaching her determination, the ALJ relied on the objective test results, which consistently revealed normal cognitive abilities and, at worst, mild to moderate speech-language delays. *See* Tr. 29, 30, 32. Although A.N.J. had some difficulty expressing herself and interacting with others—in part a byproduct of her social

timidity—the ALJ noted that at other times, she was able to interact competently with family, peers, and adults. Tr. 28-30. Moreover, despite her apparent social deficits, in April 2017 she was evaluated to have only moderately delayed "social/emotional scores." Tr. 1102. Given her test results and her functional abilities in various settings, the ALJ reasonably concluded that A.N.J.'s limitations in this domain were less than marked. At most, the contrary evidence Plaintiff cites created a conflict in the evidence, one which the ALJ reasonably resolved. The Court may not disturb that finding. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

Third, Plaintiff argues that the ALJ mischaracterized the evidence when she stated: "[A.N.J.] has made great progress over time while being enrolled in an intensive speech-language pre-school program for children with hearing deficits . . . . [Plaintiff] stated that she has not been advised that [A.N.J.] requires any further services, and hopes that [A.N.J.] will be able to enter a normal kindergarten program next year." Tr. 30; ECF No. 11-1 at 21. Plaintiff asserts that these statements are simply not true. A.N.J. was not improving from 2016 to 2017 but transitioned to a more specialized classroom environment.[3] ECF No. 11-1 at 21-22.

Although "the ALJ may not ignore or mischaracterize evidence of a person's alleged disability," *Mitchell v. Comm'r of Soc. Sec.*, No. 17-CV-1207, 2019 WL 2399533, at *3 (W.D.N.Y. June 7, 2019), the Court disagrees that those statements are mischaracterizations. The ALJ's statement that A.N.J. "has made great progress over time" refers to A.N.J.'s progress over the years since enrolling in speech therapy, not to the narrow period between 2016 and 2017. The

---

[3] The ALJ also stated that recent testing revealed there "were no concerns and/or delays in [A.N.J.'s] pre-academic development." Tr. 32 (internal quotation marks omitted). Plaintiff suggests that this statement is misleading because "A.N.J.'s speech and language delays would not be reflected by an overall IQ." ECF No. 11-1 at 22. But the ALJ relied on that testing to conclude that A.N.J. had normal cognitive abilities, not to claim that she had had average speech and language capabilities. *See* Tr. 30, 32.

ALJ elsewhere made the same observation that A.N.J. exhibited severe speech and language delays before therapy, but that her skills improved over time. *See* Tr. 29. And the ALJ explicitly recognized that A.N.J.'s services increased during the 2017 school year. *See* Tr. 28.

Likewise, the ALJ's statements that Plaintiff "has not been advised that [A.N.J.] requires further services" and that she "hopes that [A.N.J.] will be able to enter a normal kindergarten program" are accurate reflections of Plaintiff's hearing testimony.[4] Tr. 30. To the extent Plaintiff reads these statements as incorrectly implying that "A.N.J. was improving[] to the point she needed no services," ECF No. 11-1 at 22, the ALJ's decision does not rest on such a finding. The ALJ agreed that the record "clearly show[s] that [A.N.J.] has . . . deficits in various areas, and is mildly to moderately delayed compared to her similarly-aged peers." Tr. 30. Nevertheless, the ALJ viewed the overall trajectory of A.N.J.'s abilities as one of improvement, not of stasis or deterioration. Even if a different conclusion could be drawn from the record, the ALJ's inference was reasonable—particularly when one compares A.N.J.'s deficits pre-therapy to the present. *See* Tr. 29.

Fourth, Plaintiff asserts that the ALJ overlooked a variety of evidence suggesting greater impairment. *See* ECF No. 11-1 at 23. The mere fact that contrary evidence exists to support additional limitations is not enough to warrant remand. *See Gonzalez-Cruz v. Comm'r of Social*

---

[4] The transcript reads as follows:

> Q: Okay. And is the hope that she'll get into regular kindergarten? Is that what's – in a, in a few years, when it's her – when she's of age?
>
> A: I mean that would be the goal, yes.
> . . . .
> Q: Okay. Now what other services are you considering or have been advised?
>
> A: As of right now it's just the speech therapy. She was getting a teacher of the deaf, but because she's back in Buffalo Hearing and Speech, it's – she'll be getting all that at school.

Tr. 57, 59.

10

*Sec.*, 294 F. Supp. 3d 164, 187 (W.D.N.Y. 2018) ("[U]nder the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or *to argue that evidence in the record could support [his] position.*" (emphasis added)). Moreover, it is well-established that the ALJ "is not required to discuss all the evidence submitted, and [her] failure to cite specific evidence does not indicate that it was not considered." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005). Here, it does not appear that the ALJ ignored conflicting evidence or presented a one-sided picture of the record. She recognized that A.N.J. had clear social, behavioral, and speech-language deficits; she simply disagreed that those deficits were severe when compared to age-expected functioning. Tr. 30, 32. The ALJ's rationale is adequately articulated in her decision, and remand is not warranted on the mere basis that she failed to cite some evidence favorable to Plaintiff's position. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (stating that an ALJ is not required to mention "every item of testimony" where the "evidence of record permits [the court] to glean the rationale of [the] ALJ's decision").

      b.      **Interacting and Relating with Others**

Plaintiff also claims that the ALJ erred in her analysis of the domain of Interacting and Relating with Others. *See* ECF No. 11-1 at 24-27; *see also* 20 C.F.R. § 416.926a(i). Plaintiff's arguments do not warrant remand. To establish disability at step three, the child's impairments must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). The ALJ found that A.N.J. did not have a marked limitation in any of the six domains, and Plaintiff only disputes two of the domains. Because the Court has upheld the ALJ's finding regarding the domain of Acquiring and Using Information, any error with respect to the domain of Interacting and Relating with Others would be harmless: even if Plaintiff succeeded in showing

11

that A.N.J. was markedly limited in that domain she could not be found disabled.[5] *See, e.g.*, *Gualtieri v. Comm'r of Soc. Sec.*, No. 17-CV-821, 2019 WL 3497917, at *6 (W.D.N.Y. Aug. 1, 2019); *Lindner v. Colvin*, No. 13-CV-1058, 2015 WL 5156877, at *7 (W.D.N.Y. Sept. 2, 2015). Therefore, the Court need not address Plaintiff's arguments on this domain.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 3, 2019
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[5] Plaintiff does not argue that A.N.J. is extremely limited in any one domain.